I submit that a fair trial, if it means anything at all in this country, means that a defendant is given the free hand to refute any theory pressed against his innocence. That was expressly denied Mr. Skerett when the judge issued the instruction to accountability, a theory of criminality which had neither been charged in the outset of the case nor argued or addressed by either side, the state or defense. The defendant was given no chance to address, rebut, or even argue the issue of accountability prior to the issuance of the instruction. The jury went out, said they could not reach a verdict on either count, and then was given a print instruction sent back to deliberate and then told. And then asked this following question, can guilt, and I want to get the phrasing right because it's somewhat janky in terms of its grammar, can guilt be consideration by association, was the question the jury asked. Now, the defense properly objected at that point in time to the issuance of the accountability instruction. And then the court overruled the objection and issued the instruction anyway. Well, in this very court, in People v. Jameson, said that when a jury is confused, it is the duty of the trial court to clarify the issue, not to prejudice the defendant or favor the state. I submit that the terrible effect of this instruction, yes, I'm sorry, well, it's the duty of the trial court to clarify the issue. It was to actually prejudice the defendant because the defendant's attorney had no ability to argue at all about whether or not any evidence. And the state, I'm sure, is going to make a lot of deal out of the evidence of accountability or the replete evidence of what was going on in the vehicle on December 14, 2016. Unfortunately, the case law specifically bars this Court from engaging in that kind of speculation because there is nothing on record as to what the vehicle's occupants said to one another after the video of the confidential informants' camera was taken off the scene. There was on the second transaction no direct video evidence of any delivery by Mr. Skerritt to the confidential informants. So there is no way that accountability in this situation can be sustained because it violated Mr. Skerritt's due process rights and his right to give a closing argument guaranteed under the right to counsel in the Sixth Amendment. Now, the right to a fair trial, even when the state is dead certain of his evidence, is still guaranteed by our Fourteenth Amendment. But it was a denied right that Mr. Skerritt suffered here. And it wasn't the only violation of his rights by any means. There was the issuance of repeated instances of criminality on Mr. — that either could be attributed to Mr. Skerritt or in one case was directly attributable to him, that being the mug shot. There was a photograph of him in a jumpsuit, which was his very own arrest photo, presented over the objection by the defense to the jury. Now, this Court, I'm sure, is aware that under People v. Gregory, no matter how black a history the defendant may have, there is a guarantee that his guilt or innocence must solely be determined on the evidence of the crime to which he is charged. When you get into any instances of past criminality, you get into the risk of him being judged on his past misdeeds rather on the evidence itself. And the problem here is that that's exactly what was done. And it wasn't just done once. The jury asked to see all the photographs again, including the mug shot. They asked to see the video again, which in the video, the trial court, in deliberately denying the request for a mistrial because the video was played before the jury, whoops, the word parole comes out. The police officers are here clearly on camera saying, well, he's on parole. Now, there were three occupants in the vehicle on the December 16th issue, but the trial for the December 9th case was going on at the very same time. So there's taint everywhere here in both counts. And the problem is once you hear the word parole, that's it, in my opinion. That's prejudice because whether you attribute the word parole to the defendant, and I can see that the record is not clear on who is on parole, but the defendant wasn't on parole. Whether it's attributable in the minds of the jury to the defendant or anyone he was sitting with, you still have the danger of criminal prejudice. The prejudice is there, but the judge, it's like full steam ahead here. We've got to go full steam ahead. No matter the error, we're going to just disregard it. The problem is an issue under Gregory, very same situation, a simple instruction is not good enough. It's not good enough under these terms to redress that terrific error. And then the state goes on, well, the defendant was given a copy of the video. He could have objected, bring a motion before the trial happened. But even if you concede that that's even a possible factual or cohesion argument, I would say that under Gregory, the duty is not on the defense to screen this kind of stuff from the jury. The duty is squarely on the state to screen this stuff from the jury, from purview. And that is the problem. It wasn't done here, but there was this force, this driving runaway train force at the trial court level to keep the train running. And I think it just ran over Mr. Skerritt in a horrible way because he wasn't given a full and fair trial. And why is the duty on the prosecution, you said? Because the law requires it under people who are at Gregory, Justice Folgers. It clearly requires the duty and goes on in the opinion for quite some time about the state's burden, the prosecution. And it's instilled, I think, from the ethical duty they have, which is to not to seek a conviction, but to actually see that justice is done. And that is where it springs from, I think, as a policy. And I think it's a very good policy. So, you know, the court clearly states that the word parole was uttered. And under our statute, under our code, we have – there's no other way of interpreting parole. When you're on parole, the statute clearly states that means you've been to the Department of Corrections and you're on parole. There's no other way to interpret that, that word. There's no other way to dumb it down and say that it's not a prior benditio of criminality. It's – it's – it's lethal. So it's lethal to the veracity or the truth of the state's theory, and it's lethal to the just – the argument that the verdict is just. Especially when you consider that the jury was so confused that they couldn't even reach a verdict prior to the issuance of accountability instructions. They asked clearly, can we find him guilty based on his associations? That's basically what the question was asking. And the law says that the legislature, in amending the accountability statute, wanted to get away from guilt by mere association. Guilt by mere association is a thoroughly discredited practice under people who will be marquees. So it's not something that this Court should condone in any way, shape or form by sustaining the convictions that my client suffers under right now. Is it discredited or prohibited? It's – it's a thoroughly discredited. And – and I would say that – How is it discredited? Because of the idea that being merely present at a crime automatically imputes to you specific criminality. Now, if Mr. Skerek had been charged with criminal conspiracy or some kind of intent crime to cooperate with the other occupants of the vehicle to deliver the substance – Well, there's no empirical evidence to suggest that guilt by association is probably very prohibitive. I would say in this instance, Your Honor, that it was more prejudicial than prohibitive. In – in the general sense, that's certainly a possibility to argue. But in the specific sense with Mr. Skerek, in his specific case, since there was no – no evidence of what kind of interactions were going on between the occupants of the vehicle in December 14th, in the record at least, there can be no way that this Court cannot have the fear that his conviction was not unfairly made based on the issuance of the erroneous instruction. Because clearly, under Illinois Supreme Court Rule 451 – sorry, 451C, you're supposed to do the instructions after arguments have been submitted. And even if they had allowed somehow for arguments to continue after this – your issuance of this jury instruction, it still would have been devastating because there was never any charge of accountability. I mean, it's – it's basically putting the burden on the defendant in this situation to prove his innocence. What about Millsap? In Millsap, Justice Smith, that it says due process, it's on – the analysis is not on the sufficiency of the evidence. That's the key, I think, in Millsap. It's not that we have to weigh – this Court doesn't have to weigh whether or not there's enough evidence to convict him of association. The issue is whether or not Mr. Skerek's rights were violated based on due process. That's the – that's where the focus of the Court should be. Not on whether there was enough evidence, but whether the defendant was given enough chance to address that issue before the jury. And there is absolutely zero opportunity there. None whatsoever. So is there any reason that Millsap doesn't control the outcome of this appeal? I think, Judge, that Millsap pretty much – you know, if you – if you accept that the proper analysis is not on the sufficiency of evidence, then it's due process. And then, yes. Well, if the Supreme Court has said it, we don't have much choice. No, I don't think you do, Your Honor. And with that, I don't think I can address anything else other than I have. So if there's no other questions, I think I will sit down. Thank you. Mr. Nicolosi. Good morning, Your Honors. May it please the Court, counsel. Your Honors, the State submits that the defendant was not deprived of a fair trial here, as defense counsel argues. What do we do about Millsap? Your Honor, the State would argue that the evidence that he was a principal actor in this case was strong. Therefore, the error in – if there was error in instructing the jury as to accountability, it was harmless. Well, help me out. This is the Supreme Court's language. And by the way, quoting a U.S. Supreme Court hearing in New York, they said, I understand that, Your Honor. But I also believe that the court had a duty to clarify for the jury the issues that they were having. Clearly, the jury had an issue. It didn't know that it could convict the defendant even though he acted with somebody else. So the judge – again, even slight evidence on a particular theory would justify the giving of an instruction. There clearly is at least slight evidence, I would argue even more than that, that accountability instruction was proper in this case. But isn't the problem, though, again, with Millsap as being our precedent, that it's one that was given? I mean, it's not that they couldn't have given this instruction, but the timing of it. Doesn't it take away the defense right to prepare a defense based on that theory? I understand, Your Honor, yes. It certainly was not ideal. This was not the way that this should have happened. Well, it should have happened. Well, the prosecutor should have gotten ahead of this before charging – or at least before the trial began and gave intent of what theory they intended to argue. And they obviously didn't even consider this as an argument. Isn't normally the case when you're forced to give a prim instruction, it's over at that point? You don't go and start answering questions and throwing things back to the juror? I would certainly take your word for that. I don't know for sure that that's the way it typically happens, but I'm going to defer to your knowledge on supporting a question. You're not supposed to have a dialogue with the juror. I understand. Your Honor, the state will certainly understand the questions and where they're coming from, but it will evidently just argue that the errors regarding mention of parole, regarding the mug shot, the mention of parole only happened once. It was never tied to any person. The jury was instructed to disregard that mention, so that's a pretty insignificant item. The jury submits the mug shots. That was – there was a purpose for those pictures to tie the pictures to the video taken December 9th. The prosecutor would mention in closing argument that the pictures prove that the person in the December 9th video was the defendant, so there was a purpose for those. It wasn't to smear the defendant. There was no other information on those pictures that indicated the defendant had any kind of prior criminal history or anything like that. So the state would submit ultimately that the error in this case was harmless, that the evidence was overwhelming despite the fact that the procedure wasn't ideal, and the state submits that the defendant's convictions in this case should be affirmed. If there are any other questions, I'd be happy to answer them. Thank you, Mr. Nicolosi. Mr. Carson, Senator Buttle. Very briefly, Justice Smith, very briefly indeed. To address something that Justice Holdrege highlighted in the state's argument, what is the – what comes next after a prim? In this situation, I think forbearance or under Milsap is what you do. You just say you've had all your instructions and that's it, because if you start answering questions, if you start submitting new theories, after it commences its deliberations, you're on a one-way street to nowhere in terms of honoring the 14th Amendment. That's all I came here to say. Thank you. Unless there are any questions. Is this your first argument? It's my second, Your Honor. Your first with felony. Okay. Well, welcome. Actually, it was a while back, Your Honor, but this is not my first time. It was a property case, though. Well, see, I can't remember what I ate for breakfast after that, but I apologize. That's all right. Thank you, Your Honor. Thank you. Thank you very much. All right. Thank both of you for your arguments here this morning. This matter will be taken under advisement. Written disposition will be issued. And right now we'll be in recess until 1 p.m. Thank you, gentlemen.